# EXHIBIT C

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

Commercial Arbitration Tribunal

| | |
|---|---|
| JUMP BUFFALO GROVE, LLC;<br>Claimant,<br><br>v.<br><br>ROCKIN' JUMP FRANCHISE, LLC; ROCKIN'<br>JUMP HOLDINGS, LLC; SKY ZONE, LLC; and<br>CIRCUSTRIX HOLDINGS, LLC;<br>Respondents. | )<br>)<br>)<br>)<br>) No. 01-19-0001-8961<br>)<br>)<br>)<br>)<br>)<br>) |

# FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the parties on October 22, 2017, and having been duly sworn, and having heard proofs and allegations of the Parties, as reflected in the Interim Award, dated October 14, 2020, which is incorporated herein by reference, hereby enters a Final Award as follows:

This matter is here on Claimant's Post-Interim Brief and on Respondents' Petition for Attorney Fees and Costs. In the Post-Interim Brief, Claimant seeks a reversal of the Interim Award entered in favor of Respondents on October 13, 2020, and entry of an award in favor of Claimant. In other words, the Post-Interim Brief is actually a motion to reconsider the Interim Award. For the reasons stated in the Interim Award, and because of the limitations on review contained at AAA Rule 50, this request is denied.

The Franchise Agreement, at ¶19.12(4), provides that the prevailing party in an arbitration is entitled to recover its reasonable costs and expenses, including attorney's fees,

1

arbitrator fees, expert witness fees, and arbitration expenses. Respondents state that they incurred: attorney's fees and costs of $1,057,059.67; expert fees of $244,237.49; AAA costs of $25,728; and court reporting costs of $10,247.24. Claimant challenges the attorney's fees and expert fees because some of the claims did not involve the Franchise Agreement and the fees are overstated. As to Claimant's first argument, it is the Claimant who, based upon the Franchise Agreement, placed the theories of fraudulent concealment and violation of the Franchise Disclosure Act into issue. It cannot now argue that these claims are not subject to arbitration under the Franchise Agreement. As to Claimant's second argument, it is found that the attorney's fees and expert witness fees, both in rates charged and hours spent, are excessive. A reduction of 50% for both categories of fees is reasonable.

Accordingly, Respondents are awarded $650,648.58 in attorney's fees and expert witness fees against the Claimant. Respondents are further awarded $10,247.24 in court reporting costs. The share of Administrative fees of the American Arbitration Association and the compensation of the Arbitrator charged to the Respondents are also recoverable under the Franchise Agreement. The administrative fees and expenses of the American Arbitration Association totaling $16,175.00 shall be borne by Jump Buffalo Grove, LLC, and the compensation and expenses of the Arbitrators totaling $57,116.00 shall be borne $57,116.00 by Jump Buffalo Grove, LLC. Therefore, Claimant must pay Respondents an amount of $26,808.00 for Arbitrators' compensation which has, heretofore, been paid by Respondents. Therefore, the total amount awarded in favor of Rockin' Jump Franchise, LLC, Rockin' Jump Holdings, LLC, Sky Zone, LLC, and Circustrix Holdings, LLC, and against Jump Buffalo Grove, LLC, is $687,703.82.

2

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are denied.

Dated: December 4, 2020

_____  12-4-20
Thomas P. Quinn, Arbitrator        Date

3

BEFORE THE AMERICAN ARBITRATION ASSOCIATION

Commercial Arbitration Tribunal

| | |
|---|---|
| JUMP BUFFALO GROVE, LLC;<br>    Claimant,<br><br>    v.<br><br>ROCKIN' JUMP FRANCHISE, LLC; ROCKIN'<br>JUMP HOLDINGS, LLC; SKY ZONE, LLC; and<br>CIRCUSTRIX HOLDINGS, LLC;<br>    Respondents. | )<br>)<br>)<br>)<br>) No. 01-19-0001-8961<br>)<br>)<br>)<br>)<br>)<br>) |

## INTERIM AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the parties on October 22, 2017, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby issue this INTERIM AWARD, as follows:

An evidentiary hearing in this matter was held from August 17 - 21, 2020. Claimant called four witnesses - Jim Gondeck (sole owner and member of Jump Buffalo Grove, LLC ("JBG")), Shannon O'Connor (co-owner of Rockin' Jump Carol Stream ("RJCS")), Andrew Wilson (co-founder of Rockin' Jump Holdings, LLC ("Rockin' Jump")), and Steve Chestnut (CFO of Circustrix Holdings, LLC ("Circustrix")). Respondents called four witnesses - Allen Rodriguez (Executive Chairman of Circustrix), Mike Revak (COO for Rockin' Jump), Jay Diederich (Director of Real Estate and Analytics for Circustrix), and Dan Broadhurst (financial expert from Stout Consulting). The depositions of Steven Chestnut (CFO of Circustix) and Andrew Wilson (co-founder of Rockin' Jump) were also presented.

1

Claimant brings a four-count Amended Arbitration Demand sounding in breach of contract, breach of the implied duty of good faith and fair dealing, fraudulent concealment, and violation of the Illinois Franchise Disclosure Act ("Act"). Claimant had previously brought a five-count Complaint for Injunctive and Other Relief in Lake County Illinois. Counts I and II regarding injunctive relief were not included in the Amended Arbitration Demand and Count IV for violation of the Act was added.

All of the parties in this case are involved in the business of owning and operating indoor recreational entertainment facilities commonly known as trampoline parks. Circustrix acquired Rockin' Jump in March 2017. Gondeck submitted a Letter of Intent ("LOI") on June 12, 2017, to purchase both the Rockin' Jump Buffalo Grove and Rockin' Jump Carol Stream franchises from an entity headed by O'Connor. The Carol Stream deal fell through and Gondeck, on behalf of JBG, entered into a Franchise Agreement ("Agreement") with Rockin' Jump for the Buffalo Grove facility on October 22, 2017. The Rockin' Jump franchise in Buffalo Grove was officially transferred to JBG on November 28, 2017. As part of the franchising process, Rockin' Jump had given a Franchise Disclosure Document ("FDD") to JBG on September 11, 2017, which had an issuance date of March 27, 2017. Circustrix acquired Sky Zone on December 27, 2017.

JBG's main contention is that Rockin' Jump breached §3.1 of the Agreement and Item 12 of the FDD as a result of the opening of a Sky Zone trampoline park in Vernon Hills, Illinois ("SZVH"), on March 28, 2018. Claimant alleges that this acquisition violates §3.1 of the Agreement which reads, in pertinent part, as follows:

> "This Agreement grants to you a Franchise for a single **ROCKIN' JUMP** Business with an exclusive territory shown on the map…"

Claimant also alleges that the acquisition violates Item 12 of the FDD which provides, in pertinent part, as follows:

2

> "Neither we, nor any of our affiliates operate, franchise, or (have) any plans to operate or franchise a business competitive with ROCKIN' JUMP under a different trademark."

After disclaiming any promises not specifically included in the Agreement, §19.26 of the Agreement provides as follows:

> "Nothing in this or any related agreement, however, is intended to disclaim the representations made by us in the Franchise Disclosure Document that was furnished to you by us."

It is undisputed that SZVH is within the exclusive territory granted to JBG. Claimant contends that Respondents violated the Agreement and FDD when the SZVH opened in March 2018. Respondents contend that the FDD was not violated because it did not "operate, franchise," or have a plan "to operate or franchise" SZVH on the date it made the representations contained in the FDD. They further argue that the Agreement was not violated because Rockin' Jump and its Affiliates specifically retained the right to acquire businesses located in the exclusive territory. This right was reserved at §3.2 of the Agreement which provides:

> "…(W)e and all of our Affiliates…retain…the right to engage in any business, whatsoever, including the right to:…3) acquire, be acquired by, merge, affiliate with or engage in any transaction with other businesses (whether competitive or not), with units located anywhere or business conducted anywhere. These transactions may include arrangements involving competing businesses or outlets…"

A similarly worded reservation of rights is contained in Item 12 of the FDD. Respondents argue that the acquisition of Sky Zone, and its facility which was already under lease and construction in Vernon Hills on December 27, 2017, is specifically authorized under the reservation of rights.

## Breach of Contract

In its breach of contract claim, JBG alleges Respondents "breached the Agreement by constructing and opening their Sky Zone Vernon Hills location within JBG's Exclusive

3

Territory". The parties agree that, other than matters involving the Act, 815 ILCS 705/1, *et. seq.*, the law of California applies to the issues to be determined in this case.

The elements for a breach of contract claim are: (1) the existence of a contract; (2) Claimant's performance under the contract; (3) Respondents' breach; and (4) resulting damages to Claimant. *See, Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010). Where "contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." *Am. Alt Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239 (2006). A contract provision is ambiguous only if it is susceptible to more than one reasonable interpretation. *Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal. App. 4th 97 (2007). The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. Cal. Civ. Code §1641.

In analyzing these claims, especially the claim of fraudulent concealment, it is helpful to keep the facts of this case in perspective. The Agreement is between JBG and Rockin' Jump Franchise, LLC. Although the Agreement talks about selection of a location for the business (*See*, Art. 4), this was not a new franchise but was, instead, transfer of an existing franchise. The evidence shows that, other than the royalty buy down of $32,500, JBG paid only $10,000 for the transfer of this franchise. Gondeck testified that it would not have been a violation of the Agreement if Circustrix had acquired Sky Zone, and the unit at SZVH, before the effective date of the Agreement on October 22, 2017. In other words, had the transfer never occurred and O'Connor's group were still the franchisee, there would be no claim against Respondents under a similarly worded franchise agreement.

It is found that Gondeck is correct in his assumption that an acquisition by Circustrix of Sky Zone before October 22, 2017, would not have violated the Agreement. The transfer of this

4

franchise to JBG does not, however, alter this result. First of all, §3.1 only grants JBG an exclusive right to operate a *Rockin' Jump business* in the protected territory. JBG seeks to expand this right by referring to language in the second paragraph of §3.1 granting the "Affiliates" the right to compete with JBG *outside* of the exclusive territory. JBG argues that this reference to the *granting* of rights to the "Affiliates" actually works to *limit* their right from operating *within* the exclusive territory. The second paragraph of §3.1 addresses the issue of a franchisee's right to change the designated boundaries of the Exclusive Territory. Reference to "Affiliates" in the second paragraph should not be read as limitation of the reservation of rights to acquire a competing business "with units located anywhere" as contained in §3.2. That section specifically permits the acquisition of Sky Zone with its unit located in Vernon Hills. These provisions are not in conflict and specifically allow for the acquisition complained of in this case.

  Claimant makes the further argument that the promises made in Item 12 of the FDD are incorporated into the Agreement (*See*, §19.25). While the representations in the FDD are not disclaimed by the Agreement, nothing indicates that these representations are incorporated into the Agreement.

  Aside from the clear language of the Agreement, Gondeck's own actions indicate that he did not believe that a breach of the Agreement had occurred. After he learned in February 2018 that SZVH would soon open, and despite continuous written communications with Rockin' Jump, he never sent an email or letter complaining that the Agreement was breached until February 2019. Also, rather than seeking an injunction preventing SZVH from opening, he waited until SZVH had been operating for eleven months before seeking a mandatory injunction that it be closed down. Needless to say, this latter form of relief is much more difficult to obtain.

5

Gondeck's acts and omissions support the conclusion reached herein that the Agreement was not breached by the Respondents.

### Good Faith and Fair Dealing

Claimant alleges that Respondents violated their implied duty of good faith and fair dealing by acting contrary to the intent of §3.1. The implied covenant of good faith and fair dealing is that neither party will do anything that will injure the right of the other to receive the benefits of the agreement. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1 (1995). The covenant cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the agreement. *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317 (2000). If an agreement specifically gives a party the right to act in a certain manner, it is not a breach of good faith if the party acts in that manner. *Openshaw v. FedEx Ground Package Sys., Inc.*, 576 F.App'x 685 (2014). Since the Agreement specifically gave Rockin' Jump and Circustrix the right to acquire and operate SZVH, there was no violation of the implied duty of good faith and fair dealing.

### Fraudulent Concealment

Claimant alleges that Respondents fraudulently concealed the $140,000,000 acquisition of Sky Zone with its 200 international locations so as to deceive JBG "into entering into the Agreement" and obtain the $10,000 transfer fee for an existing local Rockin' Jump franchise. In addition to being absurd on its face, this claim is undermined by evidence that it was actually Revac, COO for Rockin' Jump, who requested that O'Connor inform Gondeck about the Urban Air facility that would compete with RJCS. This information caused Gondeck to terminate his planned acquisition of RJCS. If Respondents were truly motivated to deceive Claimant so as to obtain $10,000 transfer fees, Revac would have concealed the information about Urban Air.

6

All of the witnesses who testified on the topic, including Gondeck, stated that most LOI's do not result in a completed acquisition. The LOI to acquire Sky Zone was no different. In fact, the LOI contained a provision prohibiting disclosure of the potential deal (see, ¶8 of LOI). Claimant refers to an informational document referred to as "Project Bounce" as evidence that Respondents were aware of and concealed SZVH from Claimant. That document mentions a park in the "pipeline" in Chicago but says nothing about Vernon Hills. There is insufficient evidence to support the conclusion that Respondents concealed information from Claimant so as to induce it to enter into the Agreement.

### Violation of Illinois Franchise Disclosure Act

In its Amended Arbitration Demand dated April 3, 2020, Claimant alleges, for the first time, that Respondents' failure to disclose the LOI to acquire Sky Zone violates the Act. The purpose of the Act is to prevent substantial losses that have occurred to Illinois residents when incomplete information is provided by a franchisor to a franchisee in the *sale* of a franchise. 815 ILCS 705/2. It is proper to resolve alleged violations of the Act through arbitration. *Jacob v. C M Video, Inc.,* 248 Ill. App. 3d 654 (5th Dist. 1993).

Claimant argues that the Act was violated because the FDD, at Item 12, states that Respondents do not have any plans "to operate or franchise a business competitive with ROCKIN' JUMP under a different trademark". Rockin' Jump retained the right to acquire competing businesses within the Exclusive Territory. *See*, Item 12 at ¶2. Claimant argues that Respondents had plans to acquire Sky Zone when the FDD was given to it on September 11, 2017, and had a duty to update the FDD by October 30, 2017 (within 30 days of the end of the third quarter on September 30, 2017). Gondeck states that he would have terminated the closing set for November 28, 2017, had the FDD been updated as required.

7

Respondents argue that, for purposes of Item 12, a pending LOI does not constitute a "plan" to operate a competitive business. Respondents argue that the majority of potential acquisitions, and LOIs, never close. Respondents cite to FTC regulations which, in noting the confidentiality of development plans, state that a franchisor need only disclose present plans when those plans are certain. As mentioned previously, the LOI mandated confidentiality "except as required by law". LOI at ¶8.

While it is admittedly a close question, it is found that a LOI does not constitute a "plan" to operate a competitive business. Rodriguez testified that Circustrix was constantly attempting to acquire trampoline park companies. It has submitted 8 - 10 LOIs to acquire trampoline park businesses. After a 4 to 5-month process, it acquired Rockin' Jump in March 2017. Immediately after this acquisition, Circustrix sought to acquire Get Air. A LOI was submitted but the deal fell apart in July 2017. Soon thereafter, Circustrix began efforts to acquire Sky Zone which led to submission of a LOI in September 2017. Gondeck also was not a novice to the business of corporate acquisitions. He submitted an unsuccessful LOI to acquire RJCS in June 2017. In April 2018, he sought to acquire trampoline parks in Naperville and Niles. He acquired Halsted St. Deli in late 2018 and has franchised four of its locations. Gondeck learned at a Rockin' Jump convention in December 2017 that Circustrix was acquiring Sky Zone. He is aware that many LOI's do not result in a successful acquisition.

It should be noted that the one sentence of the FDD that is claimed to be misleading makes no mention of an exclusive territory. Under Claimant's interpretation of Item 12, it could bring an action under the Act when Circustrix began operating *any* Sky Zone facility after the acquisition of Sky Zone. The rights reserved to Rockin' Jump (and Respondents) in Item 12 at ¶2 of the FDD to acquire other businesses is almost verbatim to the rights reserved in §3.2 of the

8

Agreement. The only difference is that Item 12 at ¶2 specifies that the acquisition may be of a unit located anywhere, "including in the Exclusive Territory". In other words, the FDD is even more explicit than the Agreement in alerting Claimant to the fact that Respondents reserved the right to do exactly what they did in this case. Reading the FDD as a whole, the statement regarding "plans" is neither untrue nor misleading.

It has previously been held in this opinion that Respondents have not committed fraud in this case. While the subject transfer of a franchise to Claimant appears to constitute a sale under the Act (*See*, §3(9)), it is not irrelevant to note that Respondents stood little to gain from this transaction as an existing franchise was already in place at the Buffalo Grove facility. Claimant alleges at ¶43 of the Amended Arbitration Demand that Respondents violated §6(b) of the Act because the statement in Item 12 was an "untrue statement of a material fact". While the existence of intent does not appear to be required in subparagraph (b), it is clearly required in subparagraphs (a) and (c). In fact, §6 is entitled "Fraudulent practices". The statement in question was not untrue and it certainly should not trigger the punitive remedies enumerated in the Act (*See, e.g.,* §22-§26). Claimant was provided with clear information at §3.2 of the Agreement and at Item 12 at ¶2 of the FDD that Rockin' Jump (or Circustrix) could acquire a competitive business with operations within the Exclusive Territory.

A "plan" to operate a competing facility is not synonymous with a "plan" to acquire a competing business. A "plan" to operate a facility previously owned by a competitor cannot realistically occur until after that competitor has been acquired. After a business has been acquired, a decision to operate a competing business can then be made - either through a new "plan" to open or to continue with a "plan" of the acquired company to open - a competing facility. As mentioned previously, Circustrix acquired Sky Zone one month after JBG obtained

9

its franchise and, therefore, no violation of the Act has occurred. This interpretation gives a clearer definition to the timing of a "plan" and allows all provisions of the FDD to be read consistently.

Accordingly, an award is entered in favor of Respondents and against Claimant on the Amended Arbitration Demand. The parties shall have until October 27, 2020, to raise and brief any remaining and unresolved matters in this case.

This Award shall remain in full force and effect until such time as a final Award is rendered.

Dated: October 14, 2020

*Thomas P. Quinn*

Thomas P. Quinn, Arbitrator

10